**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| Brandi H., | ) | 3:21-CV-01411 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Kilolo KIJAKAZI, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | AUGUST 1, 2022 |
| *Defendant*. | | |

**MEMORANDUM OF DECISION**

Kari A. Dooley, United States District Judge:

Plaintiff, Brandi H., brings this administrative appeal pursuant to 42 U.S.C. § 405(g). Plaintiff appeals the decision of Defendant, Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Commissioner"), denying his application for supplemental security income pursuant to of Title XVI of the Act. Plaintiff moves to reverse the Commissioner's decision on the basis that the Commissioner's findings are not supported by substantial evidence in the record and/or that the Commissioner did not render a decision in accordance with applicable law. Alternatively, Plaintiff seeks remand of this matter for further proceedings before the Commissioner on the basis that she did not receive a full and fair hearing. The Commissioner responds that the decision correctly applies applicable law and is supported by substantial evidence in the record and, accordingly, moves for an order affirming the Commissioner's decision. For the reasons set forth below, Plaintiff's motion to remand is GRANTED. (ECF No. 14) Commissioner's motion to affirm is DENIED. (ECF No. 18)

**Standard of Review**

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

1

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D). In addition, a claimant must establish that their physical or mental impairment or impairments are of such severity that they are not only unable to do their previous work but "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." *Id.* § 1382c(a)(3)(B).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 416.920. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909" or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations (the "Listings");[1] (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform his past relevant work; and (5) if the claimant is unable to perform his past work, the Commissioner must finally determine whether there is other work in the national economy which the claimant can perform in light of their RFC, education, age, and work experience. *Id.* §§ 416.909;

---

[1] Appendix 1 to Subpart P of Part 404 of C.F.R. 20 is the "Listing of Impairments."

416.920(a)(4)(i)–(v). The claimant bears the burden of proof with respect to Steps One through Four and the Commissioner bears the burden of proof as to Step Five. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Sczepanski v. Saul*, 946 F.3d 152, 158 (2d Cir. 2020).

The fourth sentence of § 405(g) of the Act provides that a "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). "The scope of review of a Social Security disability determination involves two levels of inquiry. First, the court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the court must decide whether the determination is supported by substantial evidence." *Alban v. Astrue*, No. 3:11 CV 1119 CSH, 2012 WL 6728055, at *1 (D. Conn. Dec. 6, 2012), *report and recommendation adopted*, No. 3:11-CV-1119 CSH, 2012 WL 6728050 (D. Conn. Dec. 28, 2012). It is well-settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The court does not inquire as to whether the record might also support the plaintiff's claims but only whether there is substantial evidence to support the Commissioner's decision. *Bonet ex rel. T.B. v. Colvin,* 523 Fed. Appx. 58, 59 (2d Cir. 2013). Thus, substantial evidence can support the Commissioner's findings even if there is the potential for drawing more than one conclusion from the record. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). The court

can only reject the Commissioner's findings of facts "if a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). Stated simply, "[u]nless the Commissioner relied on an incorrect interpretation of the law, [i]f there is substantial evidence to support the determination, it must be upheld." *Taylor v. Berryhill*, No. 3:17-CV-01436 (SRU), 2018 WL 4562349, at *2 (D. Conn. Sept. 24, 2018) (citing *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013)) (internal quotation marks omitted).

"If the court identifies a legal error, the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning." *McIntire v. Astrue*, 809 F. Supp. 2d 13, 18–19 (D. Conn. 2010). "Where the decision is not supported by substantial evidence, the Court may remand for a rehearing. Rehearing is the proper remedy 'when 'further findings' would so plainly help to assure the proper disposition of [the] claim. . . .'" *Talyosef*, 2019 WL 4017025, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999)). The decision of whether to remand for a rehearing rests within the sound discretion of the district court. *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004).

**Factual and Procedural History**

On August 27, 2019, Plaintiff filed an application for supplemental security income[2] pursuant to Title XVI of the Act,[3] alleging a disability onset date of June 13, 2012. (Tr. 15) Her claim was initially denied on November 12, 2019, and upon reconsideration on June 16, 2020. (*Id.*) Thereafter, a hearing was held before an Administrative Law Judge ("ALJ") on November 3, 2020. (*Id.*)

---

[2] The regulations for supplemental security income are found at 20 C.F.R. § 416.1400 *et seq.*
[3] 42 U.S.C. § 1381 *et seq.*

On December 16, 2020, the ALJ issued a written decision denying Plaintiff's application for supplemental security income under Title XVI of the Act. (Tr. 15–27) At Step One, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the date she filed her application on August 27, 2019. (Tr. 17) At Step Two, the ALJ determined that Plaintiff had a severe combination of impairments, which included: degenerative disc disease of the lumbosacral spine with mild effect on the L5-S1 nerve root, status post laminectomy, degenerative joint disease of the right hip, and morbid obesity. (*Id*.) At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the regulations.[4] (Tr. 19) At Step Four, the ALJ found that Plaintiff had the RFC to perform sedentary work[5] subject to several limitations, to include that Plaintiff could not climb ladders, ropes, or scaffolds, or tolerate exposure to hazards such as open, moving machinery and unprotected heights. (Tr. 20) The ALJ Found that Plaintiff required a cane while ambulating. (*Id*.) The ALJ further found that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (*Id*.) Accordingly, the ALJ determined that Plaintiff was capable of performing her past relevant work as a receptionist because this work does not require the performance of work-related activities precluded by her RFC. (Tr. 26) The ALJ thus concluded that Plaintiff was not disabled under § 1614(a)(3)(A) of the Act from the date she filed her application on August 27, 2019, through the date of decision, December 16, 2020. (Tr. 27), and was therefore not entitled to supplemental security income under Title XVI of the Act.[6] (*Id*.) This timely appeal followed.

---

[4] *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1 (listing qualifying impairments). The ALJ specifically referenced 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.
[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).
[6] On October 1, 2021, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1)

**Discussion**

Plaintiff advances a singular argument seeking remand to the Commissioner for a new hearing. She asserts that the ALJ erred at Step Three because he applied an incorrect legal standard when determining that the severe impairment to her lower back did not meet or equal the criteria of Listing 1.04(A). Specifically, Plaintiff asserts that the ALJ determined that she did not meet Listing 1.04 because she could effectively ambulate. However, Plaintiff argues that the inability to effectively ambulate is a criteria required only under Listing 1.04(C) and is not required in order to meet Listing 1.04(A). Thus, she argues, the ALJ applied the wrong legal standard. The Commissioner does not respond directly to this argument and generally asserts that the ALJ decision is supported by substantial evidence. As noted above however, the question of substantial evidence is reached only upon a determination that the correct legal principles were applied. Although the Court disagrees with Plaintiff that the ALJ determined that she failed to meet Listing 1.04(A) on the *sole* basis that she could effectively ambulate, remand for further consideration to determine whether her impairment meets Listing 1.04(A) is required given the paucity of explanation for the listing determination and the apparent inconsistency between this determination and the ALJ's findings regarding Plaintiff's RFC.

"The Social Security regulations list certain impairments, any of which is sufficient, at step three, to create an irrebuttable presumption of disability. The regulations also provide for a finding of such a disability *per se* if an individual has an impairment that is 'equal to' a listed impairment." *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998); *see also* 20 C.F.R. § 416.920(d). "An impairment meets the requirements of one of these listings 'when it satisfies all of the criteria' of a [L]isting." *Bouton*, 2007 WL 2889449, at *2 (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)); 20 C.F.R. §§ 404.1525(c)(3); 416.925(c)(3)). "The claimant . . . bears the burden of

proving that her impairments meet [a] particular Listing." *Rivera v. Berryhill*, No. 3:17-CV-01760 (SRU), 2019 WL 4744821, at *11 (D. Conn. Sept. 30, 2019); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007). "To show that [s]he meets the criteria [of a Listing], [the claimant] must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques." *Conetta v. Berryhill*, 365 F. Supp. 3d 383, 396 (S.D.N.Y. 2019) (internal quotation marks omitted). "[T]he ALJ is required to articulate the specific reasons justifying his decision that the claimant does or does not meet the relevant listing." *Howarth v. Berryhill*, No. 3:16-CV-1844 (JCH), 2017 WL 6527432, at *5 (D. Conn. Dec. 21, 2017) (citing cases). Where the ALJ concludes that the relevant listing has not been met, the ALJ must specifically articulate "the uncontroverted evidence that supports the claimant's application for benefits, and the significantly probative evidence that he or she rejects." *Id*. at *8.

Section 1.04 of the List of Impairments "relates to disorders of the spine, and there are three subsections of Listing 1.04: (A), (B),[7] and (C), only one of which needs to be satisfied for a claimant to meet the Listing requirements." *Alban*, 2012 WL 6728055, at *3. Listing 1.04 "requires a highly specific, medically determinable finding of a spinal disorder, '(e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease,[8] facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.'" *Gonzalez ex rel. Guzman v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 360 F. App'x 240, 244 (2d Cir. 2010) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04). To satisfy Listing 1.04(A), a claimant must establish the initial criteria of disorders of the spine in Listing

---

[7] To satisfy Listing 1.04(B), which is not at issue here, a claimant must establish the initial criteria of disorders of the spine in Listing 1.04, along with "[s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every [two] hours." *Schieno v. Colvin*, No. 5:15-CV-0335 (GTS), 2016 WL 1664909, at *4 (N.D.N.Y. Apr. 26, 2016).
[8] The ALJ determined that one of Plaintiff's severe impairments was degenerative disc disease of the lumbosacral spine with mild effect on the L5-S1 nerve root, status post laminectomy.

1.04, along with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Schieno*, 2016 WL 1664909, at *4. Alternatively, "[t]o satisfy Listing 1.04(C), a claimant must establish the initial criteria of disorders of the spine in Listing 1.04, along with, "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in *inability to ambulate effectively*, as defined in 1.00B2b."[9] *Alban*, 2012 WL 6728055, at *3 n.5 (emphasis added).

Here, Plaintiff maintains that "[L]isting 1.04(A) would be, in fact, the applicable listing." (ECF No. 14-2 at 11 n.8.) The ALJ concluded that Plaintiff did not meet her burden of establishing that her impairments met or equaled the criteria of *any* listing under 1.04. In reaching this determination, the ALJ stated as follows:

> The claimant's degenerative disc disease of the lumbar spine was evaluated under listing 1.04 concerning disorders of the spine and failed to meet the criteria. . . . [A]lthough imaging has established the presence of lumbar stenosis, it does not result in the inability to ambulate effectively. . . . [T]he claimant is able to ambulate without a walker. . . . Overall, her examinations show that she is able to ambulate with a cane and has 4/5 or 5/5 strength of the lower extremities. . . . Otherwise, there is no evidence satisfying the listing criteria for nerve root compression or spinal arachnoiditis. Thus, the claimant's degenerative disc disease does not meet the criteria of listing 1.04.

(Tr. 19)

---

[9] Listing 1.00B2b provides as follows: The inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Schieno*, 2016 WL 1664909, at *5. "In other words, to constitute an inability to ambulate effectively, walking must involve the use of both arms, such as with a pair of canes or a walker." *Id*. *6.

"Cases may arise . . . in which [the court] would be unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ. In such instances, [the court] [should] not hesitate to remand the case for further findings or a clearer explanation for the decision." *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982). Unfortunately, the portion of the ALJ's decision rejecting Plaintiff's claim of a listed disability is "entirely conclusory and provides the [C]ourt with no understanding of the basis for the ALJ's decision." *Nieves v. Colvin*, No. 3:15-CV-01842 (JCH), 2016 WL 7489041, at *5 (D. Conn. Dec. 30, 2016); *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982). There is little question that the ALJ's finding that Plaintiff could ambulate effectively was a significant factor in the Listing determination. And Plaintiff is correct that effective ambulation is not a necessary showing in order to meet Listing 1.04(A). *See Alban*, 2012 WL 6728055, at *4 n.10 ("[The claimant] correctly observes that defendant's contention that [her] impairment does not meet Listing 1.04[A] because she cannot establish an 'inability to ambulate effectively' is thoroughly misplaced as . . . the inability to ambulate effectively is a condition of Listing 1.04(C). . . . [T]he Court declines to adopt defendant's assertion that [the claimant] cannot establish Listing 1.04(A) without establishing that an inability to ambulate effectively."). Further, the Court's assessment is made more difficult by the ALJ's failure to specify or address the various and distinct criteria under which the listing determination was made. Indeed, as relevant to Listings 1.04(A), the ALJ offered a single sentence: "Otherwise, there is *no evidence* satisfying the listing criteria for nerve root compression." (Tr. 19) (emphasis added) But this statement is so obviously incorrect and inconsistent with the findings made with respect to Plaintiff's RFC, that a remand for further consideration on this issue is necessary. *See Howarth*, 2017 WL 6527432, at *5.[10]

---

[10] The Court acknowledges that ALJ's failure to articulate his or her rationale may be harmless if the ALJ's reasons can be discerned from other steps in the ALJ's analysis or from the evidence in the record. *Berry v. Schweiker*, 675

First, the record is replete with objective medical findings tending to establish that Plaintiff suffered from the initial criteria of Listing 1.04. Indeed, the ALJ determined that Plaintiff suffers from degenerative disc disease of the lumbosacral spine which is what required the ALJ to then consider Listing 1.04.[11] But more to the point, there are objective medical findings tending to establish that the severity of Plaintiff's spinal disorder may have met the additional criteria of Listing 1.04(A), specifically nerve root compression. The April 3, 2012 MRI of Plaintiff's lumbar spine demonstrated mild bilateral foraminal narrowing by encroaching disc, and large left paracentral and foraminal disc protrusion at L5-S1 which displaced the left S1 nerve root. (Tr. 830–31) The August 13, 2019 MRI of Plaintiff's lumbar spine demonstrated narrowing of the left subarticular recess with impingement on the traversing left S1 nerve root. (Tr. 481) The MRI also revealed left hemilaminectomy with disc protrusion and impingement on the exiting left L5 nerve

---

F.2d 464, 469 (2d Cir. 1982) (per curiam); *Howarth*, 2017 WL 6527432, at *5 (citing cases). However, for the reasons discussed *infra*, such is not the case here. Accordingly, the Court concludes that remand is proper for further findings and a clearer explanation of the decision. *See Lamar v. Berryhill*, No. 3:17-CV-1019 (MPS), 2018 WL 3642656, at *5 (D. Conn. Aug. 1, 2018) ("[W]here the Court is unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ, this Court must remand for further findings or a clearer explanation of the decision.") (internal quotation marks omitted).

[11] For example, as early as April 3, 2012, an MRI of Plaintiff's lumbar spine demonstrated right-sided sacralization of fifteen vertebra, minor diffuse disc bulge, mild canal narrowing, mild bilateral foraminal narrowing by encroaching disc, large left paracentral and foraminal disc protrusion at L5-S1 which displaced Plaintiff's left S1 nerve root, and a moderate left foraminal narrowing. (Tr. 830–31) Plaintiff was diagnosed with left L5 and S1 radiculitis secondary to L4-5 and L5-S1 disk herniations, which required surgical intervention. (Tr. 534) Plaintiff was also diagnosed with a recurrent left L5-S1 prolapsed disk with associated radiculopathy. (Tr. 663) Both diagnoses required surgical intervention. (Tr. 534, 633)  On September 11, 2014, Plaintiff was diagnosed with newly onset sacral disorder. (Tr. 575) A July 20, 2017 x-ray demonstrated small endplate osteophytes throughout Plaintiff's thoracic spine. (Tr. 914) The x-ray also showed mild to moderate multilevel degenerative changes with disc space narrowing and facet arthropathy, most pronounced at L5-S1, demonstrating mild to moderate lower lumbosacral spine spondylosis. (Tr. 919). Thereafter, a June 27, 2019 x-ray of Plaintiff's cervical, thoracic, and lumbosacral spine showed mild to moderate multilevel disc space narrowing and osteophyte formation, which demonstrated mild levoscoliosis and mild multilevel discovertebral degenerative changes of her thoracic spine, chronic loss of disc space at L4-5 and L5-S1 and chronic, minimal retrolisthesis of L4 on L5. (Tr. 479–80). An August 13, 2019 MRI of Plaintiff's lumbar spine showed sequelae of left-sided hemilaminectomy at L4-L5 and L5-S1, bilateral facet arthropathy with ligamenta flava hypertrophy, broad-based posterior disc protrusion with narrowing of the subarticular recesses, and overall degenerative changes. (Tr. 481) An October 9, 2019 x-ray of Plaintiff's lumbar spine showed L4-5 and L5-S1 degenerative disc disease. (Tr. 364) An October 9, 2019 MRI of Plaintiff's lumbar spine further showed recurrent disk herniation and subarticular stenosis at L4-5. (Tr. 364–65) A July 17, 2020 MRI of Plaintiff's lumbar spine revealed central protrusion at L4-L5, stable moderate spinal canal stenosis, narrowing of the left subarticular zone, mild spondylosis, mild degenerative changes, and disc height loss at L4-L5, L5-S1, and T10-T1. (Tr. 655–56).

root, as well as L5 disc impingement. (Tr. 423) Plaintiff's October 9, 2019 examination for chronic left lower extremity lumbar radiculopathy, numbness, and tingling found that Plaintiff had decreased sensation in her left L5 and S1 nerve root distribution. (Tr. 364) The October 9, 2019 MRI of Plaintiff's lumbar spine further showed recurrent disk herniation and possible scarring over her left L5-S1 nerve root as well as subarticular stenosis at L4-5. (Tr. 364–65) The July 17, 2020 MRI of Plaintiff's lumbar spine revealed central protrusion at L4-L5 with mass effect on the traversing L5 nerve roots in the subarticular zones and mild mass effect on both exiting L4 nerve roots. (Tr. 656) The MRI also revealed narrowing of the left subarticular zone with mild mass effect on the traversing left S1 nerve root and mild mass effect on the exiting left L5 nerve root. (*Id*.) Moreover, from March of 2012 through August of 2020, examinations by various healthcare providers throughout the relevant period consistently demonstrated positive straight leg raises, chronic pain, weakness, sensory loss, and decreased range of motion. (Tr. 317, 325, 329, 412, 420, 461–64, 616, 619, 622, 625, 629, 634, 646, 672–76, 681–88, 690–99, 731–35)

Although the ALJ acknowledged many of these objective medical findings when fashioning Plaintiff's RFC, the ALJ nevertheless concluded that the record contained "*no evidence* satisfying the listing criteria for nerve root compression." (Tr. 19, 21–25) (Emphasis added) The administrative record does not support such a summary rejection of Plaintiff's claim. *Nieves*, 2016 WL 7489041, at *5. Rather, "[t]he ALJ's singular conclusion stands in stark contrast to the extensive . . . findings detailed above that [tend to] satisfy the Listing requirements" of 1.04(A). *Alban*, 2012 WL 6728055, at *4. The ALJ's lack of analysis and utter failure to provide reasons for his statement leaves this Court unable to determine whether his conclusion that Plaintiff's condition does not meet any listing is supported by substantial evidence. *Id*.; *Howarth*, 2017 WL 6527432, at *7.

11

In sum, the presence of objective medical evidence in the record, and the ALJ's reliance upon this evidence when establishing Plaintiff's RFC, cannot be reconciled with the ALJ's assessment that there is "no evidence" of nerve root compression. At the very least, it raises a significant question as to whether the ALJ applied the correct legal principles when evaluating the Plaintiff's degenerative disc disease at Step Three, as urged by Plaintiff. Because the ALJ appears to have used an improper standard to evaluate Plaintiff's impairments, failed to consider the entirety of the evidence of record, and did not articulate the specific reasons justifying his decision, remand is appropriate on the issue of whether Plaintiff's severe impairment meets the requirements of Listing 1.04(A). *Alban*, 2012 WL 6728055, at *4; *see Berry*, 675 F.2d at 469 (mandating remand "for further findings or a clearer explanation for the decision" where the court is "unable to fathom the ALJ's rationale in relation to evidence in the record"); *see Howarth*, 2017 WL 6527432, at *8 ("Where, as here, the court cannot discern the ALJ's rationale because the ALJ failed to address the evidence in the record on either side, the ALJ's failure to articulate is itself a sufficient basis to remand."); *see Taylor*, 2018 WL 4562349, at *6 (citing *Rosa*, 168 F.3d at 82–83) (remanding where it appears the ALJ used an improper standard in determining whether claimant met the requirements of Listing 1.04(A)).

**Conclusion**

For the foregoing reasons, Plaintiff's motion to remand is GRANTED. (ECF No. 14) Commissioner's motion to affirm is DENIED. (ECF No. 18) The Clerk of the Court is directed to enter Judgment in favor of Plaintiff and to remand this matter to the Commissioner for rehearing and further proceedings pursuant to sentence four of 42. U.S.C. § 405(g) and consistent with this Memorandum of Decision. On remand, the Commissioner shall specifically consider the record evidence regarding criteria relevant to Listing 1.04(A) and articulate reasons for accepting or

rejecting such evidence in determining whether Plaintiff's impairments meet the severity requirements.[12]

The Clerk of the Court is further instructed that if a subsequent appeal to this Court is made following remand, it is to be directly assigned to the undersigned.

**SO ORDERED** at Bridgeport, Connecticut, this 1st day of August 2022.

 /s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[12] The Court offers no opinion as to what the outcome of such an assessment should be.